1

2

3

4

5

6

7

8             **UNITED STATES DISTRICT COURT**

9             **EASTERN DISTRICT OF CALIFORNIA**

10

11  TRACY TAYLOR,                          )  Case No.: 1:10-cv-00404-LJO-BAM PC
                                            )
12           Plaintiff,                     )  FINDINGS AND RECOMMENDATIONS
                                            )  REGARDING DEFENDANTS' MOTION TO
13      v.                                  )  DISMISS
                                            )  (ECF No. 74)
14  SUSAN HUBBARD, et al.,                  )
                                            )
15           Defendants.                    )  OBJECTIONS DUE WITHIN THIRTY DAYS
                                            )
16  _____       )

17                     **Findings and Recommendations**

18      **I.      Procedural History**

19       Plaintiff Tracy Taylor ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis

20  in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on March 8, 2010.

21  On June 6, 2012, pursuant to 28 U.S.C. § 1915A, the Court issued an order that this action shall

22  proceed on Plaintiff's second amended complaint against Defendant Cate, in his official capacity, and

23  Defendant Harrington, in his individual and official capacities, for violations of the Free Exercise

24  Clause of the First Amendment and RLUIPA, and against Defendant Wegman, in her individual

25  capacity, for violation of the Free Exercise Clause of the First Amendment.  Fed. R. Civ. P. 8(a);

26  Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009); Bell Atlantic Corp. v. Twombly,

27  550 U.S. 544, 555 (2007).

28

1    On September 17, 2012, Defendants Harrington and Wegman filed the instant motion to

2  dismiss the claims against them for failure to exhaust available administrative remedies.  Fed. R. Civ.

3  P. 12(b).  Plaintiff served Defendants with an opposition, and Defendants filed a reply on January 2,

4  2013.[1]  The motion is deemed submitted.  Local Rule 230(l).

5           **II.      Motion to Dismiss for Failure to Exhaust Administrative Remedies**

6                  **A.       Legal Standard**

7           Defendants Harrington and Wegman argue that the Court should dismiss the claims against

8  them based on Plaintiff's failure to exhaust his administrative remedies in compliance with 42 U.S.C.

9  § 1997e(a).

10          Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall

11  be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a

12  prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as

13  are available are exhausted."  Exhaustion is required regardless of the relief sought by the prisoner and

14  regardless of the relief offered by the process, Booth v. Churner, 532 U.S. 731, 741 (2001), and the

15  exhaustion requirement applies to all prisoner suits relating to prison life, Porter v. Nussle, 534 U.S.

16  516, 532 (2002).

17          Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense

18  under which Defendants have the burden of raising and proving the absence of exhaustion.  Jones v.

19  Bock, 549 U.S. 199, 216, 127 S.Ct. 910, 921 (2007); Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir.

20  2003).  The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject

21  to an unenumerated Rule 12(b) motion, rather than a summary judgment motion.  Wyatt, 315 F.3d at

22  1119 (citing Ritza v. Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir.

23  1998) (per curium)).  In deciding a motion to dismiss for failure to exhaust administrative remedies,

24  the Court may look beyond the pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-

25

26

27  [1]      Although Plaintiff served Defendants with a copy of his opposition to the motion to dismiss, Plaintiff failed to file
a copy of the motion with the Court.  At the Court's direction, and in the interests of justice, Defendants submitted a copy
28  of Plaintiff's opposition.  (ECF Nos. 112-15.)

1    20.  If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper

2    remedy is dismissal without prejudice.  Id. at 1120.

3         **B.       Grievance Procedure**

4         The California Department of Corrections and Rehabilitation ("CDCR") has an administrative

5    grievance system for prisoner complaints.  Cal. Code Regs., tit. 15 § 3084.1.  During the relevant time

6    period, the process was initiated by submitting a CDC Form 602 describing the problem and the action

7    requested.  Id. at § 3084.2(a).  Appeals had to be submitted within fifteen working days of the event

8    being appealed or of the receipt of the unacceptable lower level decision.  Id. at § 3084.3.  Four levels

9    of appeal were involved, including the informal level, first formal level, second formal level, and third

10   formal level, also known as the "Director's Level."  Id. at § 3084.5.

11        **C.       Discussion**

12             **1.       Allegations in Plaintiff's Second Amended Complaint**

13        Plaintiff is currently housed at California State Prison, Los Angeles County in Lancaster,

14   California.  The events involving Defendants Harrington and Wegman are alleged to have occurred at

15   Kern Valley State Prison ("KVSP").  In relevant part, Plaintiff alleges as follows:

16        Plaintiff has practiced the religion of Thelema since 1980.  Plaintiff alleges that in order to

17   perform his religious exercises, he needs the following:   (1) to have a religious altar in his cell with

18   the religious items he chooses to place on it; (2) to wear charm bags, rings and bracelets; and (3) to use

19   religious artifacts, including tobacco products (e.g., loose tobacco, cigars, cigarettes, smoking pipe,

20   rolling papers, lighters, matches), religious herbal smokes, botanical herbs, at least 16 ounces each of

21   oils, colognes and perfumes, religious "Habiliments," cloaks/robes, denim jeans and jackets, pajama

22   tops and bottoms, boots, charm bags, charm rings, charm bracelets, pendants, medallions, talismans,

23   gemstones, crystals, bell, mirror, ash catcher, incense, incense sticks/cones, incense holders, beads,

24   chalices, oil diffuser, mortar and pestle, abalone shell, candles, candle holders, tea light candles,

25   bowls, wands, a writing kit, needle and thread for sewing, ritual kits, powders, smudge sticks, alter

26   cloths, pennants, posters, statuary, tarot deck and a radio/cd player that plays out loud.  (ECF No. 48,

27   p. 6.)

28

1    Plaintiff alleges that he has lost numerous religious items from being transferred from prison to

2    prison and he had filed numerous 602s in an attempt to get reapproved religious items that were

3    legally obtained by him at other prisons.  He also has filed various state habeas corpus actions to

4    secure his religious rights to purchase 16 ounces of oils, colognes and perfumes from the vendors of

5    his choice and to purchase tobacco for use in his wheel of love ceremony.  Plaintiff asserts that his writ

6    regarding oils was granted, but overturned on appeal.  Plaintiff also asserts that his writ on tobacco for

7    the wheel of love ceremony was granted in the Sacramento Superior Court, but is now moot because

8    he was transferred from the prison in the Sacramento district.  Plaintiff reports that his writ for wheel

9    of love ceremony tobacco was granted by the Del Norte Superior Court and is still in force.  Plaintiff

10   contends that beginning in 2009, Defendants Harrington and Wegman were aware of the court orders

11   and Plaintiff's actions in seeking to perform his religious exercises.

12   Plaintiff alleges that regulations from the California Department of Corrections and

13   Rehabilitation ("CDCR") stop him from purchasing and obtaining all of the religious items that he

14   needs and once had, but were confiscated and destroyed by various prison officials.  Despite the

15   Superior Court's order allowing him to use tobacco for the wheel of love ceremony, Plaintiff has not

16   been allowed to perform this religious exercise since 2009.

17   On January 29, 2009, KVSP issued Plaintiff the following approved religious items for use in

18   his cell:  tobacco, ring, ash catcher, seashells, bowls, bed altar cloth, candles, mortar and pestle, and

19   pendulums.  (ECF No. 48, p. 7.)

20   On February 5, 2009, Plaintiff sent letters to Defendants Harrington and Wegman informing

21   them of the Court orders allowing him to purchase oils, colognes and perfumes with a list of vendors

22   for their approval.  (ECF No. 48, p. 8.)  Plaintiff sent other letters to Defendants Harrington and

23   Wegman informing them that the Court order allowing him to use tobacco for the wheel of love

24   ceremony was being violated.

25   On February 11, 2009, after being informed by D-Facility Captain Wood that Plaintiff had

26   religious items in his cell on an altar, Defendant Wegman had prison officials confiscate Plaintiff's

27   religious items.  This action stopped Plaintiff from practicing his prayers, adoration rituals, cleansing

28   rituals and wheel of love ceremony.  (ECF No. 48, p. 8.)

1    On the same date, Defendant Harrington acknowledged receipt of Plaintiff's letters and

2  adopted regulations.  The regulations banned Plaintiff from using tobacco products in his cell or

3  carrying tobacco on his person, required Plaintiff to purchase tobacco from a specific vendor called

4  Famous Smoke Shop, allowed Plaintiff to purchase only one bugler size can or two pouches of

5  tobacco at a time, required Plaintiff to store the tobacco in a locker located in the prison chapel office,

6  allowed Plaintiff to be issued an amount of tobacco similar to the amount found in one cigarette or one

7  pipe full of tobacco, prevented Plaintiff from possessing any smoking paraphernalia other than during

8  the wheel of love ceremony, and prevented Plaintiff from ordering any smoking related items in

9  excess of those determined by a chaplain to be necessary to accommodate the wheel of love ceremony.

10    Plaintiff alleges that these regulations were specifically aimed at the suppression of his

11  religious beliefs and practices, including the religious mandate that he have an altar in his cell and that

12  one of the items on this altar be an abalone shell full of tobacco that is burned each day as an offering

13  to the spirits.  The tobacco in the abalone shell is the tobacco used in the wheel of love ceremony.

14  Plaintiff also takes tobacco out of a cigarette, mixes it with basil and burns it in the cell as a cleansing

15  ritual.  Plaintiff further alleges that it is his religious belief to carry a pouch of tobacco, other herbs and

16  a medallion on his person.  Plaintiff further contends that the vendor, Famous Smoke Shop, only sells

17  cigars, not tobacco in a can or pouch, he has a medical condition that prevents him from walking long

18  distances, the amount of tobacco varies in each wheel of love ceremony because he burns it before the

19  actual ceremony, and he needs tobacco for other religious rituals and ceremonies that he performs in

20  his cell.  (ECF No. 48, pp. 8-9.)

21    On February 13, 2009, Plaintiff sought to exhaust his administrative remedies regarding

22  Defendant Wegman's confiscation of his religious items.  He also sought to exhaust his administrative

23  remedies on all issues in this action, but the KVSP appeals coordinator found that each of his appeals

24  duplicated previous appeals upon which a decision had been rendered via litigation.  The appeals

25  coordinator allegedly informed Plaintiff that if he resubmitted the appeals, they would be confiscated.

26  (ECF No. 48, p. 9.)

27    On February 24, 2009, Defendant Harrington passed regulations designed to suppress

28  Plaintiff's religious beliefs and practices.  The regulations mandated that Plaintiff purchase tobacco

1   from only one vendor called Famous Smoke Shop, that Plaintiff purchase only one bugler size can or

2   two pouches of tobacco at a time, and that Plaintiff not possess tobacco on his person or in his cell and

3   only use the tobacco for the wheel of love ceremony.  (ECF No. 48, Ex. D.)  Plaintiff alleges that these

4   regulations stopped him from having a religious altar in his cell and stopped him from performing his

5   cleansing, adoration and offering rituals.

6          On February 6, 2010, KVSP receiving and release sergeant Marta received a bundle of cigars

7   from Famous Smoke Shop.  Sergeant Marta received instructions from Defendant Wegman not to

8   issue the tobacco to Plaintiff and to have Plaintiff pay to return the cigars.  Instead of having Plaintiff

9   return the cigars, Sergeant Marta gave the tobacco to Defendant Wegman.  Defendant Wegman

10  refused to allow Plaintiff to use the tobacco for his religious exercise.

11         Plaintiff contends that prisoners used to be allowed to obtain their religious items from the

12  vendors of their choice or from family members via mail service.  However, in 2004, CDCR changed

13  the regulation that allowed a prisoner's family to send packages.

14                    **2.       Exhaustion of Claims Against Defendants Harrington and Wegman**

15                         **a.       Summary of Relevant Appeals**

16         Based on the allegations in the complaint, Plaintiff is asserting claims (1) against Defendant

17  Harrington for issuance of regulations on February 11, 2009, and February 24, 2009, that allegedly

18  interfered with the practice of his religion; and (2) against Defendant Wegman for the confiscation of

19  his religious items on February 11, 2009, and the retention of his tobacco cigars on February 6, 2010.

20         According to Defendants, Plaintiff exhausted only one appeal while at KVSP related to his

21  religious property before he filed this action on March 8, 2010, which is identified as KVSP-09-00832

22  (IAB Case No. 0903137).  (ECF No. 74-2, Declaration of Lozano ("Lozano Dec.") ¶¶ 10, 12; ECF No.

23  74-3, Declaration of Tallerico ("Tallerico Dec.") ¶¶ 12, 14.)   In that appeal, Plaintiff alleged that

24  prison guard Lackey entered his cell and decimated its contents.  His personal property was thrown all

25  over the cell and during clean up Plaintiff noticed that his brand new CD player was broken and three

26  bags of M&Ms, a thermal top and boom, three religious gemstones were missing.  Plaintiff contended

27  that the gemstones were a part of his religious practice.  (ECF No. 74-2, Ex. A to Lozano Dec.)

28

1    Defendants also report that Plaintiff submitted one other appeal at KVSP before March 8,

2    2010, that was not rejected and that dealt with religious property, which is identified as KVSP-09-

3    00107.  (ECF No. 74-3, Tallerico Dec. ¶ 13.)  In that appeal, Plaintiff alleged that when he was

4    transferred from Pelican Bay State Prison his property, including some religious property, was not

5    placed on the bus with him.  The property included a brand new TV and CD player.  (ECF No. 74-3,

6    Ex. C to Tallerico Dec.)

7                        **b.    Summary of Arguments**

8    Defendants argue that Plaintiff has not exhausted any appeals that deal with the underlying

9    facts or claims alleged against Defendants Harrington and Wegman.  Defendants also argue that

10   Plaintiff was not prevented from exhausting his administrative appeals simply because they were

11   screened out.

12   Plaintiff counters that he exhausted his administrative remedies regarding the regulations

13   adopted by Defendant Harrington and the confiscation of his religious items by Defendant Wegman.

14   (ECF No. 115, p. 8.)   However, in contradiction, Plaintiff also agreed with Defendants that the neither

15   of the two appeals that he exhausted at KVSP "had to do with Defendants Wegman and Harrington."

16   (ECF No. 115, p. 10.)  Plaintiff further counters that the administrative appeals process was rendered

17   unavailable to him or that prison officials should be estopped from claiming non-exhaustion because

18   his appeals were wrongly screened out or lost.

19                        **c.    Failure to Exhaust**

20   Given the contradictory nature of Plaintiff's assertions, the Court focuses on Plaintiff's

21   argument that he attempted to exhaust his administrative remedies, but that the process was rendered

22   unavailable to him because his appeals were improperly screened out or lost.[2]

23   The PLRA does not require exhaustion when circumstances render administrative remedies

24   "effectively unavailable."  Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010).  Administrative

25   remedies may be rendered unavailable where an inmate's administrative grievance is improperly

26

27   _____

     [2]      The Court is not persuaded by Plaintiff's suggestion that he should not be bound by the exhaustion requirement
     because he was "tripped up" by the procedures.  It is evident that Plaintiff was able to utilize the procedures to exhaust at
28   least two of his appeals.

1    screened.  Id. at 823.  An inmate may be excused from the exhaustion requirement where the inmate

2    took "reasonable and appropriate steps to exhaust his claim," yet was precluded from exhausting

3    through no fault of his own.  Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010).

4            Defendant Harrington

5            *May 11, 2009 Appeal*

6            Plaintiff argues that he submitted an appeal on May 11, 2009, which described how Defendant

7    Harrington had implemented procedures that were designed to stop Plaintiff's religious exercises.

8    Plaintiff asserts that he submitted this appeal to the KVSP Appeals Office, but that the appeals

9    coordinator sent it back to him on May 29, 2009, claiming that the appeal was a duplicate.  (ECF No.

10   115, Ex. 7.)  As the appeal was returned as a duplicate, Plaintiff believes that Defendants should be

11   estopped from arguing that Plaintiff did not submit any appeals related to the regulations adopted by

12   Defendant Harrington.  Plaintiff further argues that he returned the appeal to the appeals coordinator

13   and explained that it was not a duplicate.  Thereafter, on June 10, 2009, his appeal was screened out as

14   an abuse of the appeal process.  (ECF No. 115, pp. 69-70 (Ex. 7).)  Plaintiff thus contends that his

15   appeal was wrongly screened out and that he was prevented from exhausting his claims against

16   Defendant Harrington.

17           In this instance, Plaintiff's own evidence calls into question the veracity of his arguments.[3]

18   Plaintiff declares that he submitted an appeal concerning Defendant Harrington's regulations on May

19   11, 2009.  (ECF No. 115, p. 25, Declaration of Plaintiff ("Plaintiff's Dec.") ¶ 13.)  However, the

20   appeal is dated May 14, 2009.  (ECF No. 115, pp. 66-67 (Ex. 7).)  The appeal also refers to another

21   appeal that he submitted on "6-10-09," which is *after* May 11, 2009.  (ECF No. 115, p. 67 (Ex. 7).)

22

23   _____

24   [3]       Plaintiff is cautioned that his filings are subject to Federal Rule of Civil Procedure 11.  Rule 11 provides that "[b]y
     presenting to the court a pleading, written motions, or other paper—whether by signing, filing, submitting, or later

25   advocating it—an ... unrepresented party certifies that to the best of the person's knowledge, information, and belief,
     formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as

26   to harass, cause unnecessary delay, or needlessly increase the cost of litigation; ... [and] (3) the factual contentions have
     evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for

27   further investigation or discovery . . . ." Fed. R. Civ. P. 11(b).  Rule 11(c) provides for the imposition of appropriate
     sanctions for the violation of Rule 11(b).  Fed. R. Civ. P. 11(c).  Accordingly, Plaintiff's failure to adhere to Rule 11 may
     result in the imposition of sanctions, including dismissal of this action.

28

1    Defendants also have submitted evidence challenging the veracity of Plaintiff's arguments.

2  First, Defendants correctly note that Plaintiff's May 11, 2009 appeal does not appear to have been

3  received by the KVSP appeals office because it is not stamped.  All appeals that are sent and received

4  by the KVSP appeals office are stamped.  (ECF No. 91-1, Reply Declaration of Tallerico ("Tallerico

5  Reply Dec.") ¶ 5.)  The stamp is how the appeals office determines whether the appeal was submitted,

6  and if it is not stamped, then it was not received.  (Id.)

7    Although Defendants admit that KVSP received an appeal on May 11, 2009, it does not appear

8  to be Plaintiff's appeal concerning Defendant Harrington because that appeal lacks a date stamp.

9  Further, Plaintiff claims that his May 11, 2009 appeal was first rejected on May 29, 2009.  (ECF No.

10  115, p. 25, Plaintiff's Dec. ¶¶ 14-16.)  However, prison records indicate that the May 11, 2009 appeal

11  received by KVSP was rejected and sent back on May 14, 2009.  (ECF No. 91-1, Tallerico Reply Dec.

12  ¶ 9.)  Plaintiff also claims that KVSP rejected his resubmitted appeal on June 10, 2009.   In contrast,

13  prison records show that an appeal was rejected on June 10, 2009, for refusing to interview or

14  cooperate with a reviewer, but the rejection related to an appeal received on May 27, 2009.  (ECF No.

15  91-1, Tallerico Reply Dec. ¶ 14.)  Thus, it could not have been rejection of Plaintiff's May 11, 2009

16  appeal.  It also could not have been a rejection of Plaintiff's resubmitted appeal because Plaintiff did

17  not resubmit his appeal until at least June 6, 2009.  (ECF No. 115, pp. 66-70 (Ex. 7).)

18    The inconsistencies in Plaintiff's arguments and exhibits preclude a finding that his May 11,

19  2009 administrative appeal was improperly screened or that his administrative remedies were

20  "effectively unavailable."

21    *December 14, 2009 Appeal*

22    Plaintiff also alleges that he submitted an appeal on December 14, 2009, related to his claims

23  against Defendant Harrington, which was wrongly screened out as a duplicate.  (ECF No. 115, pp. 17-

24  18, pp. 79-82 (Ex. 9).)  To demonstrate that administrative remedies were unavailable due to improper

25  screening, Plaintiff must establish (1) that he actually filed a grievance, that if pursued through all

26  levels of administrative appeals, "would have sufficed to exhaust the claim" that he seeks to pursue,

27  and (2) that prison officials screened out his grievance "for reasons inconsistent with or unsupported

28  by applicable regulations."  Sapp, 623 F.3d at 823-24.  Here, Plaintiff has not presented evidence that

9

1    the December 2009 appeal would have exhausted Plaintiff's claims against Defendant Harrington even

2    if it had not been screened out.

3        Plaintiff is complaining about regulations that were adopted in February 2009, but he did not

4    submit the instant appeal until December 2009.  Pursuant to CDCR regulations, Plaintiff's appeal was

5    not timely because it was not submitted within fifteen days after Defendant Harrington adopted the

6    regulations.  (Cal. Code Regs., tit. 15 § 3084.1; Marella v.Terhune, 568 F.3d 1024, 1027 (9th Cir.

7    2009) (inmates do not properly exhaust their administrative appeals if they do not timely submit the

8    appeal and had an opportunity to do so).  Plaintiff does not provide evidence that he attempted to

9    submit this appeal in a timely manner or that he filed a new appeal challenging the alleged refusal of

10   prison officials to review it.

11       For these reasons, Court finds that Plaintiff has failed to demonstrate that administrative

12   remedies were not available to him regarding his claims against Defendants Harrington.

13       Defendant Wegman

14       Plaintiff's claims against Defendant Wegman relate to two different events:  (1) allegations

15   that Defendant Wegman had officials confiscate his religious items from his cell on February 11,

16   2009; and (2) allegations that Defendant Wegman prevented him from receiving cigar tobacco in

17   February 2010.

18       With regard to the February 11, 2009 incident, Plaintiff contends that he submitted an appeal

19   related to this incident, which was screened out because Plaintiff could only submit one non-

20   emergency appeal every seven days.  Plaintiff therefore waited the required period and resubmitted the

21   appeal.  On March 12, 2009, the appeals coordinator screened out the appeal as a duplicate of a case

22   with litigation.  Plaintiff thereafter wrote to the appeals coordinator and explained that the appeal was

23   not a duplicate of a case with litigation.  The appeals coordinator again screened out the appeal as a

24   duplicate of a case with litigation and informed Plaintiff that if he continued to file this appeal, it

25   would be confiscated.  (ECF No. 115, pp. 15-16, 72-77 (Ex. 8).)  Plaintiff therefore contends that he

26   could not exhaust this appeal because it was improperly screened.

27       Defendants contend that CDCR's regulations permit appeals to be screened out as a duplicate

28   of another appeal.  Cal. Code Regs., tit. 15, § 3084.3(c)(2).  While this may be a correct statement

1   regarding CDCR's regulations during the relevant time period, Defendants have provided no basis for

2   the Court to conclude that Plaintiff's appeal was, in fact, duplicative of another appeal or, more

3   particularly, a case in litigation.  Defendants do not identify the duplicate appeal or litigation.

4   Moreover, that Plaintiff's appeal was duplicative of another case in litigation suggests that Plaintiff

5   likely exhausted his administrative remedies regarding this claim against Defendant Wegman.  The

6   record does not permit the Court to conclude that the appeal was properly screened, and therefore it is

7   recommended that Defendants' motion to dismiss the claim against Defendant Wegman arising from

8   the February 2009 incident be denied.

9          With regard to the February 2010 incident, Plaintiff claims that he submitted an appeal at the

10  informal level directly to Defendant Wegman through the prison mail system.  When Plaintiff did not

11  receive a response, he prepared an identical appeal and sent it to the appeals coordinator, noting that

12  he did not receive a response from Defendant Wegman at the informal level.  Plaintiff claims that he

13  did not receive a response from the appeals coordinator.  (ECF No. 115, pp. 16-17.)

14         Plaintiff has not presented sufficient evidence to support his claim that he submitted an appeal

15  regarding the February 2010 incident and it was somehow lost or ignored.  Plaintiff also has not

16  submitted any evidence that he filed an appeal to complain about the loss or the lack of response from

17  Defendant Wegman or the appeals coordinator.  Moreover, the record reflects that a February 11, 2010

18  appeal was received—not lost or ignored—and screened out.  (ECF No. 91-1; Tallerico Reply Dec. ¶

19  13.)  The record has raised questions concerning Plaintiff's credibility and Plaintiff has not presented

20  any evidence to support his claim of attempted exhaustion.  The Court therefore cannot conclude that

21  Plaintiff took reasonable and appropriate steps to exhaust his claim arising from the February 2010

22  incident, but was unable to do so through no fault of his own.  Nunez, 591 F.3d at 1224 (excusing

23  prisoner's failure to timely exhaust his administrative remedies because he took reasonable and

24  appropriate steps to exhaust his claim, but was precluded from exhausting through no fault of his

25  own).

26         For these reasons, the Court finds that Plaintiff's administrative remedies were effectively

27  unavailable for his claim against Defendant Wegman arising from the February 2009 confiscation of

28  his religious items.  However, the Court finds that Plaintiff has not exhausted his administrative

11

1   remedies for his claim against Defendant Wegman arising from the February 2010 retention of his

2   cigar tobacco, and there is no basis to excuse his failure to exhaust this claim

3   **V.        Conclusion and Recommendations**

4   Based on the foregoing, IT IS HEREBY RECOMMENDED as follows:

5   1.   Defendants' motion to dismiss for failure to exhaust administrative remedies be

6        GRANTED IN PART and DENIED IN PART as follows:

7        a.   Defendants' motion to dismiss the claims against Defendant Harrington be

8             GRANTED, and Plaintiff's claims against Defendant Harrington be DISMISSED

9             without prejudice;

10       b.   Defendants' motion to dismiss the claim against Defendant Wegman arising from

11            the alleged failure to provide Plaintiff with cigar tobacco in February 2010 be

12            GRANTED, and Plaintiff's claim arising from the alleged failure to provide

13            Plaintiff with cigar be DISMISSED without prejudice; and

14       c.   Defendants' motion to dismiss the claim against Defendant Wegman arising from

15            the alleged confiscation of Plaintiff's religious items in February 2009 be DENIED;

16            and

17   2.   This action proceed on Plaintiff's claims (1) against Defendant Cate, in his official

18        capacity, for violations of the Free Exercise Clause of the First Amendment and RLUIPA;

19        and (2) against Defendant Wegman, in her individual capacity, for violation of the Free

20        Exercise Clause of the First Amendment, arising out of the alleged confiscation of his

21        religious items on February 11, 2009.

22

23   These Findings and Recommendations will be submitted to the United States District Judge

24   assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within thirty (30) days

25   after being served with these Findings and Recommendations, any party may file written objections

26   with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and

27   Recommendations."  The parties are advised that failure to file objections within the specified time

28

1    may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir.

2    1991).

3

4    IT IS SO ORDERED.

5

       Dated:    **September 3, 2013**          /s/ *Barbara A. McAuliffe*

6                                       UNITED STATES MAGISTRATE JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28